## FUCHS vs. TREAT and another.

EQUITY. *(1, 2) Reformation of deed.*
COUNTERCLAIM: PLEADING. *(3) Counterclaim for reformation of deed, in ejectment by the grantee.*

1. Equity will reform a deed where the evidence leaves no reasonable doubt that, through a mistake, the instrument does not embody the real intention of the parties to it.
2. Thus, where the deed is of fifteen feet off the east side of a lot, and it appears that a portion of the grantor's warehouse stood upon the east fifteen feet of the lot, and also clearly appears that it was the intention of the vendor to sell and convey, and of the purchaser to buy, only so much of said lot as lay east of said warehouse, but that both parties believed that there were fifteen feet between the warehouse and the east line of the lot: *Held,* that the deed should be reformed.
3. In ejectment by the grantee in such deed, for a portion of the land covered by said warehouse, on the ground that the premises were conveyed by said deed, the answer alleged a mistake in the deed, and asked for its reformation, without designating such averments as a *counterclaim*. The action having been commenced before the decision in *Stowell v. Eldred,* 39 Wis., 616, the rule there stated, as to pleading counterclaims, will not be applied here.

APPEAL from the Circuit Court for *Manitowoc* County.

Ejectment, for a strip of land twenty-three and seven-eighths inches wide on the western side of the east fifteen feet of lot 10, block 155, in a certain city plat. The answer, after a general denial, alleged in substance that the defendant *Treat*, on the 15th of July, 1873, sold to Anton Fuchs, plaintiff's husband, so much of said lot as lay to the east of a certain warehouse then and still situated upon said lot, and occupied by the defendant *Conway;* that said Anton Fuchs and the plaintiff, *Maria Fuchs*, were upon the premises so purchased, at the time of such purchase, and saw the same as they were pointed out to them by the defendant *Treat* and others; that at the time of the sale, *Treat* was informed and believed that the distance from said warehouse to the east line of said lot would measure fifteen feet, and so believing he executed and deliv-

ered to Anton Fuchs his deed of fifteen feet off the east side of said lot; that if the fifteen feet so mentioned include any part of the land upon which said warehouse stands, then said deed to that extent is erroneous and contrary to the intent and understanding of the parties thereto at the time of the making thereof. It is further alleged that the premises so sold to Anton Fuchs are still his property, and that the conveyances by which the apparent title had vested in the plaintiff were without consideration, and were obtained by the plaintiff for the purpose of bringing this suit. Prayer, that the court, by its judgment in this action, "decree that the deed aforesaid from said *Treat* to said Anton Fuchs shall be corrected in such a manner and to such an extent as the facts in the case .... shall show equitable as between the parties hereto."

On the trial, the plaintiff introduced in evidence, 1. The deed from *Treat* and wife to Anton Fuchs, dated January 16, 1873, conveying the east fifteen feet of the lot in question. 2. A quitclaim deed of the same premises from Anton and *Maria Fuchs* to one Kautzka, dated September 16, 1873. 3. A quitclaim deed of the same premises from Kautzka and wife to *Maria Fuchs*, dated September 18, 1873. Plaintiff then called a witness, who testified that he was a surveyor, and had made a survey to find the distance from the east side of the lot in question to the warehouse thereon, and that he found the warehouse standing on the west $23\frac{7}{8}$ inches of these fifteen feet of said lot. It was admitted that the position of the warehouse has not been changed since the sale of the lot to Anton Fuchs. The plaintiff and other witnesses called in his behalf gave evidence tending to establish the averments of the answer; and Anton Fuchs was examined for the plaintiff in rebuttal. The general effect of the evidence is sufficiently stated in the opinion.

The court found the facts as alleged in the complaint, and rendered judgment for the plaintiff; from which the defendants appealed.

For the appellants, a brief was filed by *J. S. Anderson*, and there was oral argument by *W. F. Vilas*. For the respondent, the cause was submitted on the brief of *J. D. Markham*.

COLE, J. If it be assumed that the surveyor found the true boundaries of lot 10, block 155, and that a portion of the warehouse stands upon the east fifteen feet of that lot, then we are clearly of the opinion that the deed must be reformed on account of a mistake in the quantity of land conveyed. For equity will reform a deed where there has been a mistake, provided the evidence leaves no reasonable doubt that the instrument does not embody the real intention of the parties to it. This doctrine is so familiar that it needs no reference to authorities in its support. Now to our minds the proof is overwhelming in favor of the claim that it was only the ground east of the warehouse which was intended to be purchased and sold, and that, while the deed conveys the east fifteen feet of the lot, yet this was not the actual understanding and agreement of the parties. Upon that point the evidence is perfectly conclusive, and the mistake is as clearly established as it can be by parol testimony. Even Anton Fuchs himself admits that at the time he made the purchase he did not suppose he was buying any of the land upon which the warehouse stood. He purchased that portion of the lot lying east of the warehouse. True, he says he expected to buy fifteen feet off the east side of the lot; but all supposed there was fifteen feet between the warehouse and the east line of the lot. Mr. Tewelles, the interpreter, who acted as the friend if not the agent of Fuchs, measured the lot, and said there was fifteen feet from the east line up to the warehouse. The plaintiff and her husband went upon the lot during the negotiation; saw the situation of the premises, and fully understood that they were only buying the land up to the warehouse. The contract was for the sale of that portion of the lot, whether it was more than fifteen feet wide or not.

The intention of the parties ought then to be carried out, and the mistake in the deed, if there is one, rectified. It appears that it is only a trifle over thirteen feet from the warehouse to the east line, according to the survey made by the witness Armsby. It is said that the testimony of this witness is wholly insufficient to establish with any degree of certainty the boundary lines. This may be so; but, conceding that his survey is correct, the evidence shows in the clearest and most satisfactory manner that it was only that portion of the lot lying east of the warehouse, which was bargained for and sold. Under these circumstances the deed should be rectified, to make it conform to the intentions of the parties.

In his answer, the defendant *Treat* sets up fully this equitable defense, that there is a mistake in the deed, and asks that the same be corrected. The matters stated in the answer would doubtless constitute a counterclaim before the rule laid down on that subject in *Stowell v. Eldred*, 39 Wis., 616. This action was commenced before that decision was made, and therefore the doctrine of that case cannot apply to it. There was no reply to what must be regarded as the counterclaim, and consequently the mistake in the deed is admitted on the record. But, as we have already said, the evidence is conclusive that there is a mistake in the deed, and the court should grant the relief asked in the answer.

The judgment of the circuit court is reversed, and the cause is remanded with directions to reform the deed so as not to include any land upon which the warehouse stands.

*By the Court.*—It is so ordered.